Date of Service: April 8, 2011

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- x
                                                                     :
ANDREW ELLIS,
                                                                     :   Case No. 10 Civ. 1741 (DLI)(JO)
                                    Plaintiff,
                                                                     :
            -against-
                                                                     :
COMMONWEALTH WORLDWIDE
CHAUFFEURED TRANSPORTATION OF NY, LLC,                               :
d/b/a Commonwealth Worldwide, and SCOTT
RUTTER,                                                               :

                                    Defendants.                      :

-------------------------------------------------------------------- x


## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
## OF THEIR MOTION FOR SUMMARY JUDGMENT


Of Counsel:

        Katherine C. Glynn, Esq.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................1

STATEMENT OF FACTS ...................................................................................................2

    Commonwealth NY's Business ..........................................................................2

    The Plaintiff's Employment with Commonwealth NY ......................................3

    Plaintiff's Compensation ...................................................................................4

    Commonwealth NY's Break Policy ..................................................................4

PLAINTIFF'S CLAIMS ....................................................................................................5

ARGUMENT ....................................................................................................................6

I.     SUMMARY JUDGMENT STANDARD ...........................................................6

II.    THE PLAINTIFF'S FLSA AND NEW YORK LABOR LAW CLAIMS OF
      OVERTIME VIOLATIONS MUST BE DISMISSED BECAUSE THE
      DEFENDANTS ARE EXEMPT FROM OVERTIME PROVISIONS ...........................7

    A.    There is No Question of Fact that Commonwealth NY is a Motor Carrier
        and is Therefore Exempt from the FLSA's Overtime Provisions ......................7

    B.    There is No Question of Fact that Commonwealth NY qualifies for the
        "Taxicab Exemption" to the FLSA Overtime Provisions ..................................9

    C.    There is No Question of Fact that the Plaintiff's State Law Claim for
        Unpaid Overtime Must be Dismissed on the Basis that the FLSA's
        Exemptions Are Controlling in New York ......................................................10

III.   AS A MATTER OF LAW, PLAINTIFF'S CONTINGENT PAY IS A "TIP,"
      WHICH IS NOT INCLUDED IN AN OVERTIME CALCULATION ........................12

IV.   THE PLAINTIFF WAS NOT ENTITLED TO COMPENSATION UNDER NEW
      YORK'S "SPREAD OF HOURS" LAW.........................................................15

    A.    The Plaintiff Alleges the Defendants Violated 12 NYCRR § 137-1.7, a
        Regulation that Only Applied to the Restaurant Industry and Was
        Repealed by the New York Department of Labor ...........................................15

    B.    The Plaintiff Was Paid In Excess of the Minimum Wage and Therefore
        Was Not Entitled to An Extra Hour Of Pay Under the Spread of Hours
        Provision.......................................................................................................15

V.    THE PLAINTIFF IS NOT ENTITLED TO ANY ADDITIONAL PAY
      RELATING TO MEAL BREAKS..................................................................16

    A.    Commonwealth NY's Break Policy Did Not Violate Any Federal or State
        Laws, and the Plaintiff Had a Duty to Inform His Employer When He Did
        Not Take a Meal Break..................................................................................16

**TABLE OF CONTENTS**
(continued)

                                                                                          **Page**

    B.     The Meal Breaks Provided by Commonwealth NY Were Legally
           Sufficient ................................................................................................18

VI.    PLAINTIFF'S UNJUST ENRICHMENT AND BREACH OF CONTRACT
       CLAIMS FAIL AS A MATTER OF LAW....................................................20

VII.   THE CLAIM OF INDIVIDUAL LIABILITY AGAINST DEFENDANT SCOTT
       RUTTER MUST BE DISMISSED ON THE GROUNDS THAT HE IS NOT AN
       "EMPLOYER" UNDER 29 U.S.C. § 203(D)...............................................22

VIII.  THE PLAINTIFF'S CLAIM OF "WILLFUL" VIOLATIONS OF THE FLSA &
       NEW YORK LABOR LAWS MUST BE DISMISSED ON THE GROUNDS
       THAT HE CANNOT MEET HIS BURDEN OF SHOWING RECKLESS
       DISREGARD OF THE LAW .....................................................................23

CONCLUSION ...................................................................................................25

# TABLE OF AUTHORITIES

Page

## Federal Cases

Anderson v. Liberty Lobby,
  477 U.S. 242 (1986) ...............................................................................6, 7

Cariani v. D.L.C. Limousine Service, Inc.,
  363 F. Supp. 2d 637 (S.D.N.Y. 2005) ......................................................9, 10

Celotex Corp. v. Catrett,
  477 U.S. 317 (1986) ...................................................................................6

Clarke v. JPMorgan Chase Bank, No.,
  08 Civ. 2400(CM)(DCF), 2010 WL 1379778 (S.D.N.Y. Mar. 26, 2010)...........................23, 24

Damassia v. Duane Reade, Inc.,
  No. 04 Civ. 8819(GEL), 2005 WL 1214337 n.2 (S.D.N.Y. May 20, 2005) ...........................24

Dauphin v. Chestnut Ridge Transp., Inc.,
  544 F. Supp. 2d 266 (S.D.N.Y. 2008) .....................................................11

Franco v. Ideal Mortgage Bankers, Ltd.,
  No. 07-CV-3956 (JS)(AKT), 2011 WL 317971 (E.D.N.Y. Jan. 28, 2011) ...............................13

Franklin v. Breton Int'l, Inc.,
  No. 06 Civ 4877 (DLC), 2006 WL 3591949 (S.D.N.Y. Dec. 11, 2006)................................11

Fry v. McCall,
  945 F. Supp. 655 (S.D.N.Y. 1996) ...........................................................21

Garcia v. Fleetwood,
  No. 6:05-cv-673-Orl-KRS, 2007 W: 3286614 (M.D. Fla. Nov. 5, 2007)...............................8

Goenaga v. March of Dimes Birth Defects Found.,
  51 F.3d 14 (2d Cir. 1995) .......................................................................6

Herman v. Stern,
  172 F. 3d 132 (2d Cir. 1999) .................................................................22

Kahn v. IBI Armored Serv., Inc.,
  474 F. Supp. 2d 448 n.1 (E.D.N.Y. 2007)......................................................11

Kuebel v. Black & Decker Inc.,
  No. 08-CV-6020T, 2010 WL 1930659 (W.D.N.Y. May 12, 2010)...................................17, 24

Ling Nan Zheng v. Liberty Apparel Co., Inc.,
  No. 99 Civ 9033(RJS), 2009 WL 1383488 (S.D.N.Y. May 18, 2009) ................................24

McLaughlin v. Richland Shoe Co.,
  486 U.S. 128 (1988) .............................................................................23

Mendez v. Radec Corp.,
  232 F.R.D. 78 (W.D.N.Y. Nov. 22, 2005) .....................................................19

## TABLE OF AUTHORITIES
(continued)

Page

Keun-Jae Moon v. J. Kwon,
   248 F. Supp. 2d 201 (S.D.N.Y. 2002) ..........................................................22, 24

Reich v. S. New England Telecomm. Corp.,
   121 F.3d 58 (2d Cir. 1997) ........................................................................19

Rodriguez v. Just Lunch Int'l,
   No. 07 Civ. 9227(SHS)(KNF), 2009 WL 399728 (S.D.N.Y. Feb. 17, 2009) ..........................21

Rossi v. Assoc. Limousine Serv., Inc.,
   438 F. Supp. 2d 1354 (S.D. Fla. 2006) ..............................................................7

Seever v. Carrols Corp.,
   528 F. Supp. 2d 159 (W.D.N.Y. 2007) ..............................................................17

Skidmore v. Swift & Co.,
   323 U.S. 134 (1944) ................................................................................19

Sosnowy v. Perri Farms, Inc.,
   No. 10-CV-2829 (ADS)(WDW), 2011 WL 488692 (E.D.N.Y. Feb. 10, 2011) ................15, 16

Torres v. Gristede's Operating Corp.,
   628 F. Supp. 2d 447 (S.D.N.Y. 2008) ..............................................................11

Young v. Cooper Cameron Corp.,
   586 F. 3d 201 (2d Cir. 2009) ........................................................................24

Zhang v. L.G. Apparel, Inc.,
   No. 09-CV-3240 (KAM), 2011 WL 900183  (E.D.N.Y. Feb. 18, 2011) ..................................24

**State Cases**

Dav-El Serv., Inc., et al v. Commonwealth Worldwide Chauffeured Trans. of NY, LLC, et al,
   Index No. 20244 (Sup. Ct. of the State of N.Y. County of Queens, Aug. 28, 2007) ..................9

Martinez v. Dav-El Reservation System, Inc.,
   Index No. 605 SCO 05 (N.Y. City Civ. Ct., County of Queens, Aug. 11, 2005) ......................9

Sabetya v. Sterling Drug, Inc.,
   69 N.Y.2d 329 (1987) ................................................................................21

**Federal Statutes**

29 U.S.C. § 203(b) ......................................................................................22

29 U.S.C. § 203(d) ......................................................................................22

29 U.S.C. § 216(b) ......................................................................................23

29 U.S.C.A. § 213(b) ....................................................................................7

29 U.S.C.A. § 213(b)(17) ................................................................................9

49 U.S.C.A. § 13102 ....................................................................................7

iv

**TABLE OF AUTHORITIES**
(continued)

Page

49 U.S.C.S. § 31132(1)......................................................................7

49 U.S.C.S. § 31132(1)(B)..................................................................8

Section 7 and Section 13 of 29 U.S.C.A ...........................................10, 11

**State Statutes**

N.Y. Lab. Law § 160..........................................................................11

New York Lab. Law § 652...................................................................16

New York Labor Law § 193..................................................................16

NY Labor Law § 162(2), § 162(3) and § 162(4) ....................................6

**Federal Regulations**

29 C.F.R. § 531.52..........................................................................12, 13

29 C.F.R. § 531.53..............................................................................12

29 C.F.R. § 531.60..............................................................................12

29 C.F.R. § 778.108.........................................................................12, 14

29 C.F.R. § 778.117............................................................................13

29 C.F.R. § 782(a)................................................................................7

29 C.F.R. § 785.19..............................................................................19

**State Regulations**

12 NYCRR § 137-1.7..........................................................................15

N.Y. Comp. Codes R. & Regs. tit. 12 § 137-1.1 ..................................15

N.Y. Comp. Codes R. & Regs. tit. 12 § 137-17 ....................................6

N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.2 ....................6, 10, 11, 23

N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4 ................................15, 16

## PRELIMINARY STATEMENT

The FLSA'S Motor Carrier Exemption and the Taxicab Exemption extinguish the plaintiff's claims in this case.  Commonwealth Worldwide Chauffeured Transportation of NY, LLC ("Commonwealth NY"), a limousine company, squarely meets the qualifications for these exemptions on the undisputed facts in the record, meaning that the plaintiff had no entitlement to the overtime that he claims, and requiring summary judgment in favor of Commonwealth NY.

Even if the exemptions did not apply – though they certainly do – the plaintiff's claims fare no better at this summary judgment stage.  With no obligation to do so, Commonwealth NY paid the plaintiff time and a half for his work over 40 hours in any given week.  The plaintiff's entire claim for overtime is based on his contention that his so-called "commissions" should be added to his regular rate to compute overtime.  A fatal problem with this claim is that the monies that he calls "commissions" are, as a matter of law, tips.  Tips, unlike commissions, are not required to be considered in computing overtime.  Therefore summary judgment is appropriate.

The plaintiff also makes so-called "spread of hours" claims under a statute that applies only to the restaurant industry and was repealed.  Commonwealth NY is entitled to summary judgment on this claim.  Alternatively, the plaintiff's spread of hours claims fails as a matter of law because he was paid more than minimum wage.

Commonwealth NY did not violate any meal break law, as the plaintiff contends.  For four months during his five years of employment, it required him to notify the company if he did not get a meal break, so that the company could pay him for any meal breaks he skipped.  The plaintiff never reported missing any meal breaks.  For this reason, if the plaintiff failed to get paid for any missed meal breaks – a contention that is unsupported by the record – it is his own doing, and Commonwealth NY is not liable as a matter of law.

1

The remaining claims are related to the preceding arguments, and are likewise flawed and ripe for summary judgment, as are the claims against the individual defendant, Scott Rutter.

## STATEMENT OF FACTS

### Commonwealth NY's Business

Commonwealth NY is in the business of providing chauffeured transportation for compensation and began operations in July 2004 in Long Island City. Commonwealth NY's business consists normally of common carrier transportation of persons and such property as they may carry with them to the requested destination in the community and beyond. Defendant Scott Rutter is the Executive Vice President of the company. (Rutter Aff. ¶1, 2)

Commonwealth NY has a variety of motor vehicles in its fleet, including sedans, limousines, SUV's and vans. Approximately 39% of the vehicles in the fleet are rated as suitable for transporting more than eight passengers, including the driver. (Rutter Aff. ¶8, Ex. A)

Commonwealth NY is regulated by the Federal Department of Transportation ("DOT"). It has a Federal Motor Carrier Safety Administration (FMCSA) Certificate. As required by the DOT, all of the company's larger vehicles bear Commonwealth NY's name, logo, DOT number and motor carrier number on the outside of the vehicle. Commonwealth NY's chauffeurs are subject to drug testing in accordance with DOT procedures. (Rutter Aff. ¶9)

Commonwealth NY's chauffeurs frequently transport passengers on interstate highways and across state lines. Commonwealth NY routinely transport passengers to and from New Jersey, Massachusetts, Connecticut, Rhode Island, Maryland, Pennsylvania and other states. Commonwealth NY's website and other advertising materials tout its ability to transport passengers across states lines. (Rutter Aff. ¶10)

While Commonwealth NY routinely transports passengers across state lines, the company's trips are predominantly local, i.e., within New York City. Commonwealth NY

2

operates without fixed routes or contracts for recurrent transportation. It serves the miscellaneous and local transportation needs of its immediate community. These needs may include occasional and unscheduled trips to or from transportation terminals (like the airport) as the passengers may request. (Rutter Aff. ¶11-12)

The majority of vehicles in Commonwealth NY's fleet are smaller motor vehicles, designed to comfortably seat no more than five people, including the driver. Commonwealth NY's vehicles have the company's name and logo displayed on the outside of the vehicle. (Rutter Aff. ¶13)

Commonwealth NY's vehicles have a livery license plate, as required by the New York Taxi and Limousine Commission ("TLC"), and have a TLC permit. In addition, all of Commonwealth NY's chauffeurs, including the plaintiff, are required to have a Vehicle Operator's License issued by the TLC. Commonwealth NY has a TLC license to dispatch vehicles from its base. (Rutter Aff. ¶14)

Commonwealth NY provides transportation to members of the general public upon request. It often receives and accommodates requests for immediate service. (Rutter Aff. ¶15) Commonwealth NY has stands at many local hotels and cars stationed at the airports. (Rutter Aff. ¶16-17)

## The Plaintiff's Employment with Commonwealth NY

On July 20, 2004, the plaintiff was hired as a chauffeur. (Rutter Aff. ¶18) The plaintiff's employment was terminated on June 24, 2009. The plaintiff's job responsibilities included, "the safe transportation of the clients of Commonwealth customers, to and from the various destinations in the tri-state area, including New York City and out of state." (Glynn Aff. Ex. C, Ellis Tr. p. 6; Rutter Aff. ¶19) The plaintiff was not responsible for any sales functions at Commonwealth NY. (Rutter Aff. ¶19)

3

During his employment with Commonwealth NY, the plaintiff drove a variety of the company's vehicles in the fleet, including the commercial vehicles, such as vans that carried fourteen passengers, and limousines which carried nine or eleven passengers. (Rutter Aff. ¶20)

**Plaintiff's Compensation**

While employed at Commonwealth NY, the plaintiff received the following types of compensation:

1) **Hourly pay at a rate of $8.00 per hour ("Base Pay")**. This hourly rate was paid from the time that the plaintiff was due to report to work until he returned the vehicle to Commonwealth NY at the end of the day.[1] (Rutter Aff. ¶21);

2) **Overtime pay at a rate of $12.00 per hour for hours worked over 40 in any given week ("Overtime Pay")[2]**. When calculating overtime pay for the plaintiff, the company paid time and a half based upon his hourly rate of $8.00, which amounted to $12.00 per hour in overtime pay. (Rutter Aff. ¶22)

3) **Contingent pay based upon the discretion of the passenger ("Contingent Pay")[3]**. Commonwealth NY generally recommends that their clients give their chauffeurs a twenty percent tip, but the client makes the ultimate decision of whether a tip is paid, and if so, the amount given. The plaintiff agreed and acknowledged that Commonwealth does not impose a mandatory tip on our customers. "All tips are discretionary by the customer." (Rutter Aff. ¶25, Ex. B) The plaintiff was paid all tips determined by customers.

**Commonwealth NY's Break Policy**

Commonwealth regularly paid the plaintiff for his thirty minute meal breaks. For four months during 2009 – between February and June 2009 – the company changed this policy, and deducted for his thirty minute meal break. When Commonwealth NY began deducting for the thirty minute meal break, it met with the plaintiff to explain the policy. It also gave the plaintiff his own copy of the Break, Meals and Start Time Policy ("Break Policy") which provides that:

---

[1] Commonwealth NY is unique in this practice. Common industry practice is to only pay chauffeurs for the time they have passengers in their vehicles. (S. Rutter Aff. ¶21)

[2] While Commonwealth NY was exempt from paying overtime, it chose to offer overtime to its chauffeurs. (S. Rutter Aff. ¶22)

[3] There is a dispute as to whether the Contingent Pay should be called a "gratuity" or a "commission," but as is discussed later, any semantic debate is resolved as a matter of law by relevant the statutory definitions.

Note: because Chauffeurs are away from the office and because trip requirements vary day-to-day, it is up to the Chauffeur to take his/her breaks when the opportunity presents itself.  At a minimum Commonwealth allows and expects Chauffeurs to take:

Two (2) fifteen-minute paid breaks during every six (6) hours of work time, plus One thirty-minute unpaid lunch break for every six (6) hours of work time (note: if a driver's work day extends through both lunch and dinner there may be an additional unpaid meal break).

***Please tell your supervisor if you do not believe you had the opportunity for a full meal break in any given day***.  (Rutter Aff. Ex. B) (emphasis added)

The plaintiff signed the Break Policy.  (Glynn Aff. Ex. C, Ellis Tr. p. 152-153; Rutter Aff. Ex. B)  After the new Break Policy was implemented, the plaintiff never informed Commonwealth NY that he was ever unable to take a meal break, which he was required to do. (Glynn Aff., Ex. C, Ellis Tr. p. 44)  Commonwealth NY learned for the first that he claims that he was not able to take a meal break when they received his complaint in this action.

Commonwealth NY specifically implemented the requirement that drivers inform their supervisor if they were unable to take a break to ensure that all its chauffeurs were taking their meal breaks and that they were properly paying their drivers.  In compliance with company policy, other drivers did properly inform Commonwealth NY on the few occasions that they were unable to take their meal breaks, and the company did not deduct for the meal breaks in those instances.  (Rutter Aff. ¶31; Pessolano Aff. ¶13, Ex. B)

## PLAINTIFF'S CLAIMS

The plaintiff has asserted four causes of action in his complaint.  The First Cause of Action asserts an alleged violation of the FLSA for not including the plaintiff's Contingent Pay, which he calls "commissions," in the overtime rate of pay, and for taking automatic break deductions, even when he was unable to take a break.[4]

---

[4] Originally the First and Second Causes of Action claimed "Record-Keeping Failures."  The plaintiff has abandoned these claims.  At the March 7, 2011 pre-motion conference before Judge Irizarry, plaintiff's counsel informed the Court that the plaintiff is no longer asserting such claims.

The plaintiff's Second Cause of Action claims that Commonwealth NY violated New York Labor Laws by failing to include the plaintiff's "commissions" in the overtime rate of pay in violation of N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.2.  He alleges that Commonwealth NY failed to pay him an additional one-hour's pay when he worked more than 10 hours in violation of N.Y. Comp. Codes R. & Regs. tit. 12 § 137-17.  He also alleges that Commonwealth NY failed to provide meal breaks in violation of NY Labor Law § 162(2), § 162(3) and § 162(4).  Finally, that the Defendants improperly made automatic deductions for meal breaks the plaintiff allegedly never took.

The plaintiff's Third Cause of Action is for unjust enrichment.  He claims that the Defendants were unjustly enriched by withholding monies that rightfully belong to him by violating statutes relating to overtime, meal break deductions and the payment for an extra hour of pay for working ten or more consecutive hours.  The plaintiff's Fourth Cause of Action is for an alleged breach of contract.

## ARGUMENT

### I.   SUMMARY JUDGMENT STANDARD

A motion for summary judgment will be granted under Federal Rule 56, if the entire record demonstrates that, "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Anderson v. Liberty Lobby, 477 U.S. 242, 250 (1986).  The movants will prevail if they can show an absence of evidence to support an essential element of the nonmoving party's claim. Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  Once the movant has demonstrated that there is no genuine issues of material fact, the opposing party must, "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S.

at 256 (1986). As will be demonstrated below, there is no genuine issue of material fact, and the

Defendants are entitled to judgment as a matter of law.

## II.    THE PLAINTIFF'S FLSA AND NEW YORK LABOR LAW CLAIMS OF OVERTIME VIOLATIONS MUST BE DISMISSED BECAUSE THE DEFENDANTS ARE EXEMPT FROM OVERTIME PROVISIONS

The plaintiff contends that the Defendants deprived him of overtime pay in violation of

the federal and New York law. As a matter of law, this claim fails because Defendants were

never under any legal obligation to pay the plaintiff overtime because they are exempt pursuant

to the Motor Carrier Exemption and Taxicab Exemption.

### A.    There is No Question of Fact that Commonwealth NY is a Motor Carrier and is Therefore Exempt from the FLSA's Overtime Provisions

Motor carriers are exempt from the FLSA's overtime provisions under the so-called

"Motor Carrier Exemption." The Motor Carrier Exemption provides that the federal overtime

provisions do not apply to, "any employee with respect to whom the Secretary of Transportation

has power to establish qualifications and maximum hours of service pursuant to the provisions of

the Motor Carrier Act." 29 U.S.C.A. § 213(b). The Secretary of Transportation has authority

over employees who work for a motor carrier, as such term is defined in the Motor Carrier Act

and whose duties affect the safety of operation of motor vehicles in interstate commerce. Rossi

v. Assoc. Limousine Serv., Inc., 438 F. Supp. 2d 1354, 1359-60 (S.D. Fla. 2006); 29 C.F.R. §

782(a).

The term "motor carrier" is defined by 49 U.S.C.A. § 13102 as, "any person who

provides commercial motor vehicle transportation for compensation." A "commercial motor

vehicle" is defined by 49 U.S.C.S. § 31132(1) as:

> (1) "commercial motor vehicle" means a self-propelled or towed vehicle used on the highways in interstate commerce to transport passengers or property, if the vehicle used on the highways in interstate commerce to transport passengers or property, if the vehicle
> (A)    has a gross vehicle weight rating or gross vehicle weight of at least 10,001 pounds, whichever is greater;

(B)     is designed or used to transport more than 8 passengers (including the driver) for compensation;

(C)     is designed or used to transport more than 15 passengers, including the driver, and is not sued to transport passengers for compensation; **or**

(D)     is used in transporting material found by the Secretary of Transportation to be hazardous under section 5103 of this title and transported in quantity requiring placarding under regulations prescribed by the Secretary under section 5103.

It is clear that Commonwealth NY satisfies the definition of a "motor carrier" because it is a chauffeured limousine service in the business of providing commercial motor vehicle transportation for compensation (Rutter Aff. ¶2)  Its vehicles are used on the highways in interstate commerce to transport passengers.  (Rutter Aff. ¶10)

Since the plaintiff was a chauffeur who performed his duties in interstate commerce, his work directly affected the safety of operation of motor vehicles in the transportation on the public highways of passengers in interstate commerce.  Garcia v. Fleetwood, No. 6:05-cv-673-Orl-KRS, 2007 W: 3286614, at *3 n.5 (M.D. Fla. Nov. 5, 2007)(holding that the full-time drivers of motor vehicles directly affected the safety of operation of motor vehicles in the transportation of passengers on public highways to the extent that work is done in interstate commerce).

Commonwealth NY's fleet includes numerous vehicles designed to carry more than eight passengers.  (Rutter Aff. ¶8; Ex. A)  Therefore, Commonwealth NY is clearly a motor carrier within the meaning of the Motor Carrier Act under 49 U.S.C.S. § 31132(1)(B).  During his employment with Commonwealth NY, the plaintiff drove numerous vehicles that carried more than eight passengers (including the driver).  (Rutter Aff. ¶20)

The fact that Commonwealth NY is a motor carrier subject to the Secretary of Transportation is further evidenced by: (1) it having a DOT-issued motor carrier number; (2) its drivers are subject to DOT-mandated drug testing and hours standards; and (3) that it is subject to DOT regulations.  (Rutter Aff. ¶9)

8

New York State Courts have already held that Commonwealth NY's competitor, Dav-El Services, Inc., is a DOT-regulated motor carrier who is subject to the motor carrier exemption. See Dav-El Serv., Inc., et al v. Commonwealth Worldwide Chauffeured Trans. of NY, LLC, et al, Index No. 20244 (Sup. Ct. of the State of N.Y. County of Queens, Aug. 28, 2007) (Glynn Aff., Ex. D) (holding that the motor carrier exemption applied where the limousine company produced evidence showing that it was a motor carrier subject to the Secretary's jurisdiction and was engaged in activities directly affecting the safety of operation of motor vehicles in interstate commerce). See also Martinez v. Dav-El Reservation System, Inc., Index No. 605 SCO 05 (N.Y. City Civ. Ct., County of Queens, Aug. 11, 2005)(Glynn Aff. Ex. E)(holding that the claims for overtime wages against the limousine company were subject to dismissal pursuant to the motor carrier and taxicab exemptions).  Since the Motor Carrier exemption applies to Commonwealth NY, his claims for overtime must be dismissed.

### B.    There is No Question of Fact that Commonwealth NY qualifies for the "Taxicab Exemption" to the FLSA Overtime Provisions

The Taxicab Exemption provides that the overtime provisions of the FLSA, "shall not apply with respect to . . . any driver employed by an employer engaged in the business of operating taxicabs." 29 U.S.C.A. § 213(b)(17).

It is clear from the law and the undisputed facts that Commonwealth NY also qualifies for the Taxicab Exemption. In Cariani v. D.L.C. Limousine Service, Inc., 363 F. Supp. 2d 637 (S.D.N.Y. 2005), a case that is nearly identical to the case at bar, the Court held that the taxicab exemption applied to a "limousine service."  In defining the "business of operating taxicabs," the Court deferred to the definition contained in the Department of Labor's Field Operations Handbook (1999 Ed.), as follows:

> 24h 01 "Business of operating taxicabs:"  The taxicab business consists normally of common carrier transportation in small motor vehicles of persons and such property as they may carry with them to any requested destination in the community.  The business

9

operates without fixed routes or contracts for recurrent transportation. It serves the miscellaneous and predominantly local transportation needs of the community. It may include such occasional and unscheduled trips to or from transportation terminals as the individual passengers may request, and may include stands at the transportation terminals as well as other places where numerous demands for taxicab transportation may be expected.

Cariani, 363 F. Supp. 2d at 641. Applying this definition, the Court concluded that the defendant limousine company was subject to the Taxicab Exemption.

For the same reasons as the Court found in Cariani, Commonwealth NY fits the DOL's definition of a business operating taxicabs:

1)    Commonwealth NY provides common carrier transportation (S. Rutter Aff. ¶7);
2)    Commonwealth NY utilizes mostly small motor vehicles (S. Rutter Aff. ¶13);
3)    Commonwealth NY carries persons and such property as they may carry with them to any requested destination in the community (S. Rutter Aff. ¶7);
4)    Commonwealth NY's business operates without fixed routes or contracts for recurrent transportation (S. Rutter Aff. ¶12);
5)    Commonwealth NY serves the miscellaneous and predominantly local transportation needs of the community, including such occasional and unscheduled trips to or from transportation terminals as the individual passengers may request (S. Rutter Aff. ¶12);
6)    Commonwealth NY has stands at hotels, where numerous demands for taxicab transportation may be expected. (Rutter Aff. ¶16);

Since the taxicab exemption applies to Commonwealth NY, it was not required to pay the plaintiff overtime, and the plaintiff's overtime claims must be dismissed.

**C.    There is No Question of Fact that the Plaintiff's State Law Claim for Unpaid Overtime Must be Dismissed on the Basis that the FLSA's Exemptions Are Controlling in New York**

The Motor Carrier Exemption and the Taxicab Exemption extinguish the plaintiff's New York state law claims relating to overtime. The plaintiff claims that Commonwealth NY violated 12 N.Y. Comp. Codes R. & Regs § 142-2.2, which provides that:

An employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate in the manner and methods provided in and ***subject to the exemption of Section 7 and Section 13 of 29 U.S.C.A. 201 et seq., the Fair Labor Standards Act of 1938.*** (Emphasis Added)

New York Courts recognize that because New York's overtime exemptions are specifically defined in reference to the FLSA, the FLSA's exemptions and the interpretations of the FLSA are controlling in New York. "New York's overtime provisions expressly incorporate the FLSA exemptions." Torres v. Gristede's Operating Corp., 628 F. Supp. 2d 447, 456 (S.D.N.Y. 2008). Similar to this case, in Dauphin v. Chestnut Ridge Transp., Inc., 544 F. Supp. 2d 266, 276-77 (S.D.N.Y. 2008), the plaintiff also alleged violations of N.Y. Lab. Law § 160 and 12 N.Y. Comp. Codes R. & Regs. § 142-2.2. The defendant employer demonstrated that the Motor Carrier Exemption applied. The Court held that since the plaintiff's state law overtime claims were subject to the exemptions of sections 7 and 13 of 29 U.S.C. § 201 et seq., these exemptions included the motor carrier exemption.

The Eastern District of New York has found that, "New York's overtime law incorporates most of the FLSA's substantive provisions and exemptions, see N.Y. Comp. Codes R & Regs. tit.12 § 142-2.2, and a court's analysis under federal and state law will, in this and most cases, be the same." Kahn v. IBI Armored Serv., Inc., 474 F. Supp. 2d 448, 450 n.1 (E.D.N.Y. 2007) (applying the same analysis of applicability of the motor carrier exemption to claims under both FLSA and the New York state overtime law). See also Franklin v. Breton Int'l, Inc., No. 06 Civ. 4877 (DLC), 2006 WL 3591949 (S.D.N.Y. Dec. 11, 2006) (applying FLSA exemption in dismissing state law claims for overtime).

In sum, once this Court concludes that the Motor Carrier Exemption and Taxicab Exemption apply to Commonwealth NY, it must also dispose of the plaintiff's New York State claims regarding overtime because the exemptions of the FLSA apply to 12 N.Y. Comp. Codes R. & Regs § 142-2.2.

### III.   AS A MATTER OF LAW, PLAINTIFF'S CONTINGENT PAY IS A "TIP," WHICH IS NOT INCLUDED IN AN OVERTIME CALCULATION

The plaintiff claims that his Contingent Pay should be added to his base rate for calculation of overtime, because, he claims, the pay is a "commission." The law provides otherwise. Under the FLSA's definitions, which control this analysis, and any application of rudimentary common sense, the Contingent Pay is a "tip," and therefore is not to be considered in calculating overtime. Therefore, even if the above-described exemptions did not shield Commonwealth NY from liability – which they do – summary judgment would still be required.

To determine overtime pay under the FLSA, the "regular rate" of pay must be determined. It is defined by 29 C.F.R. § 778.108 as follows:

> The "regular rate" of pay under the Act cannot be left to a declaration by the parties as to what is to be treated as the regular rate for an employee; it must be drawn from what happens under the employment contract. The Supreme Court has described it as the hourly rate actually paid the employee for the normal, nonovertime workweek for which he is employed – an "actual fact".

Overtime payments are defined by 29 C.F.R. § 531.60 as:

> When overtime is worked by a tipped employee who is subject to the overtime pay provisions of the Act, his regular rate of pay is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid.

Gratuities or tips are not considered compensation tied to the employee's work for the employer, and therefore are not part of the overtime calculation. Gratuities or tips are defined by 29 C.F.R. § 531.52 as:

> A "tip" is defined in 29 C.F.R. § 531.52:[5]

> A tip is a sum presented by a customer as a gift or gratuity in recognition of some service performed for him. It is to be distinguished from payment of a charge, if any, made for the service. Whether a tip is to be given, and its amount, are matters determined solely by the customer, and generally he has the right to determine who shall be the recipient of

---

[5] Tips can either be presented by a customer directly or "transferred by the employer to the employee pursuant to directions from credit customers who designate amounts to be added to their bills as tips." 29 C.F.R. § 531.53

his gratuity.

It is clear from the statutory definitions that the plaintiff's Contingent Pay is a "tip" under the law.  In accordance with 29 C.F.R. § 531.52, it is "determined solely by the customer" and the customer has the right to determine who shall be the recipient of the tip. It is undisputed that the Contingent Pay was left to the sole discretion of the customers.  This fact is confirmed in Commonwealth NY's policy, ***signed by the plaintiff*** that stated, "Commonwealth does not impose a mandatory tip on our customers.  All tips are discretionary by the customer."  (Rutter Aff., Ex. B)  This issue as to whether the Contingency Pay was mandatory or not is critical; the plaintiff even concedes that a non-mandatory Contingent Pay should not be included in an overtime calculation (Glynn Aff. Ex. C, Ellis Tr. p. 159).

The plaintiff has no evidence that the Contingency Pay was mandatory.  When asked at his deposition about this, the plaintiff could only claim that he "assumed that Commonwealth NY charged and received a twenty percent gratuity on all fares performed for its customers." (Id. at p. 62)  This "assumption" does not constitute evidence sufficient to ward off summary judgment.  Franco v. Ideal Mortgage Bankers, Ltd., No. 07-CV-3956 (JS)(AKT), 2011 WL 317971, at *7 (E.D.N.Y. Jan. 28, 2011) (assumptions held not to be valid evidence at summary judgment stage).

Rightfully, therefore, Commonwealth NY does not include the Contingent Pay – tips – in its overtime calculation. When calculating overtime pay for the plaintiff, it paid him time and a half based upon his hourly rate of $8.00 per hour, which amounted to $12.00 per hour in overtime pay. (S. Rutter Aff. ¶22)

It is clear that the plaintiff's Contingent Pay – despite the plaintiff's optimistic labeling – is not a commission.  A "commission" is defined by 29 C.F.R. § 778.117 as:

13

Commissions (whether based on a percentage of total sales or of sales in excess of a specified amount, or on some other formula) are payments for hours worked and must be included in the regular rate.

The plaintiff was not a salesperson. He had no responsibilities whatsoever related to sales, to which a commission may be applicable. His claim of a "commission" appears to be, at best, a semantic error or confusion.[6]

Further, there is no documentary evidence that provides that Commonwealth NY's chauffeurs will receive commissions. Commonwealth NY's documents refer only to "tips." For example, Commonwealth NY's Transportation Invoices state, "Recommended Tip," Trip Tickets used by the plaintiff and all chauffeurs only refer to a "Gratuity," plaintiff's paychecks reference his "tips." (Rutter Aff. Ex. C) The plaintiff received a weekly Chauffeur Pay Detail, which lists the information for all the passengers he transported, provides a column for a "recommended tip" and a "special tip." (Rutter Aff. Ex.C)

Even if Commonwealth NY called the Contingent Pay a "commission" – which the defendants deny – it does not matter for the purposes of this motion. The law is clear that the nature of the pay controls, regardless of what the parties "declar[e]" it to be. See 29 C.F.R. § 778.108. Here, it is clear that the plaintiff chauffeur was getting tips, not commissions, which are not included in plaintiff's regular rate for calculation of overtime. For this reason, and because the plaintiff has no other theory for entitlement to additional overtime pay, Commonwealth NY is entitled to judgment on the plaintiff's claims for overtime.

---

[6] For example, the plaintiff testified that in his opinion, a gratuity and a commission are "synonymous" and he does not know of any difference between the two. He stated that, "I deem a commission as a commission that the company will pay you based on figures, 20 percent, 30 percent. And I based on the gratuity as the same, in the same way, that if it's a 20 percent, 40 percent . . . I based it on the same criteria, on the same level. I don't understand it in any different way." (Glynn Aff. Ex. C, Ellis Tr. p. 53)

IV.     **THE PLAINTIFF WAS NOT ENTITLED TO COMPENSATION UNDER NEW YORK'S "SPREAD OF HOURS" LAW**

A.     **The Plaintiff Alleges the Defendants Violated 12 NYCRR § 137-1.7, a Regulation that Only Applied to the Restaurant Industry and Was Repealed by the New York Department of Labor**

The plaintiff alleges that he "worked more than 10 hours on at least some workdays, but Defendants failed to pay him an additional one-hour's pay at the applicable minimum wage rate, in contravention of N.Y. Comp. Codes R. & Regs. tit. 12, § 137-1.7." (Glynn Aff. Ex. A, ¶57) This provision of the law, however, ***only applied to the restaurant industry***, and had no applicability to the limousine, taxicab or transportation industries. See N.Y. Comp. Codes R. & Regs. tit. 12, § 137-1.1 ("Application:  Every employer in the restaurant industry shall pay to each employee, as defined in this Part, not less than the minimum wage rates provides in this Part.").  The plaintiff was employed as a chauffeur for a limousine company, and therefore the rule did not apply to the plaintiff or the Defendants.

Additionally, the New York State Department of Labor repealed N.Y. Comp. Codes R. & Regs. tit. 12, § 137-1.7 effective January 1, 2011. E.g. Sosnowy v. Perri Farms, Inc., No. 10-CV-2829 (ADS)(WDW), 2011 WL 488692, at *15 (E.D.N.Y. Feb. 10, 2011).

B.     **The Plaintiff Was Paid In Excess of the Minimum Wage and Therefore Was Not Entitled to An Extra Hour Of Pay Under the Spread of Hours Provision**

Presumably, the plaintiff intended to claim under the so-called "Spread of Hours Provision," N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4, which provides that:

> An employee shall receive one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required in this Part of any day in which:
>
> (a)    the spread of hours exceeds 10 hours; or
> (b)    there is a split shift; or
> (c)    both situations occur.

This provision only applies, however, to employees who are receiving only minimum wage. See Sosnowy v. Perri Farms, Inc., No. 10-CV-2829 (ADS)(WDW), 2011 WL 488692, at

*15-16 (E.D.N.Y. Feb. 10, 2011) (agreeing with the cases that find that the explicit reference to the "minimum wage" in section 142-2.4 indicates that the spread-of-hours provision is properly limited to enhancing the compensation of those receiving only the minimum required by law").

It is undisputed that the plaintiff was paid in excess of the minimum wage rate during his entire employment period with the Defendants. The following chart lists the minimum wage rate in New York between 2004 and 2009 and pronounced by New York Lab. Law § 652:

| Year | Minimum Wage Rate in New York |
|------|-------------------------------|
| 2004 | $5.15 |
| 2005 | $6.00 |
| 2006 | $6.75 |
| 2007 | $7.15 |
| 2008 | $7.15 |
| 2009 | $7.15 |

The plaintiff was employed between July 20, 2004 and June 24, 2009 and was paid $8.00 an hour for his entire employment. Therefore, the plaintiff was always paid in excess of the minimum wage and not entitled to an extra hours pay under the Spread of Hours provision. As a result, the Defendants did not violate the Spread of Hours provision and summary judgment must be granted.

## V.    THE PLAINTIFF IS NOT ENTITLED TO ANY ADDITIONAL PAY RELATING TO MEAL BREAKS.

### A.    Commonwealth NY's Break Policy Did Not Violate Any Federal or State Laws, and the Plaintiff Had a Duty to Inform His Employer When He Did Not Take a Meal Break

The plaintiff's Complaint alleges that the Defendants violated the Fair Labor Standards Act for taking automatic break deductions for meals he did not take. The plaintiff also alleges deductions were made from his wages other than those authorized under New York Labor Law § 193 for breaks he did not take.

When a company has established policies and procedures requiring accurate time keeping and pay for all hours worked for employees who must "self-report" their time worked, and an employee fails to accurately report the time they worked – the employer cannot be held in violation of the requirements of the FLSA and New York Labor Laws. Seever v. Carrols Corp., 528 F. Supp. 2d 159, 170-71 (W.D.N.Y. 2007). See also Kuebel v. Black & Decker Inc., No. 08-CV-6020T, 2010 WL 1930659 (W.D.N.Y. May 12, 2010) (holding the employer was not liable for the employee's FLSA claims when the employee falsely recorded the hours he worked).

The plaintiff was employed with Commonwealth NY from July 20, 2004 until June 24, 2009. For only four months of the plaintiff's five year employment with Commonwealth NY, between February and June 2009, the company deducted for his thirty minute meal break[7].

When Commonwealth NY began deducting for the thirty minute meal break, the company met with the plaintiff, gave him a copy of Break, Meals and Start Time Policy (hereinafter the "Break Policy"), and explained the policy to him and all other chauffeurs. The company conducted a question and answer session at the meeting to ensure all chauffeurs thoroughly understood the policy. The plaintiff signed and accepted the terms of the Break Policy (Pessolano Affidavit, Ex. A; Rutter Aff. ¶27-29,. Glynn Aff. Ex.C, Ellis Tr. pp. 39-40)

The Break Policy states in relevant part:

Given the nature of our business, Chauffeurs have plenty of "down time" during the course of their day. It is not a problem for drivers to have sufficient time for meals and breaks. Note: because Chauffeurs are away from the office and because trip requirements vary day-to-day, it is up to the Chauffeur to take his/her breaks when the opportunity presents itself.

At a minimum Commonwealth allows and expect Chauffeurs to take:

Two (2) fifteen-minute paid breaks during every six (6) hours of work time, plus

---

[7] Summary Judgment should be granted for the time period prior to February 2009 because there was no automatic meal break deduction taken by Commonwealth NY until February 2009 until the plaintiff's termination in June, 2009. The plaintiff testified and admitted that prior to the automatic deduction he was paid for all his break time. (Glynn Aff. Ex. C, Ellis Tr. pp. 44-45)

One thirty-minute unpaid lunch break for every six (6) hours of work time (note: if a driver's work day extends through both lunch and dinner there may be an additional unpaid meal break).

*Please tell your supervisor if you do not believe you had the opportunity for a full meal break in any given day.*  (Emphasis Added)

It is undisputed that unlike other chauffeurs, the plaintiff never informed Commonwealth NY that he was ever unable to take a meal break.  The plaintiff testified,

Q.   And did you ever, during that time period, communicate to Commonwealth, hey, today I didn't get to take that break, so don't deduct that from my pay?

A.   No.   (Glynn Aff., Ex. C, Ellis Tr. p. 44)

Q.   So you never complained about the inability to take a break while you were employed at Commonwealth?

A.   No.  (K. Glynn Affirmation, Ex. C, Ellis Tr. p. 37)

Commonwealth NY created and effectively communicated its Break Policy to the plaintiff to ensure he was properly compensated for his time and able to take meal breaks. The first time that Commonwealth NY ever heard the plaintiff was unable to take a meal break was when it received the plaintiff's complaint in this case.  If the plaintiff did not inform Commonwealth NY that he was unable to take a break, it was impossible for the company to know that it should not take the deduction from his pay.  Therefore, the Defendants cannot be held liable for the plaintiff's failure to accurately report his hours worked.

**B.     The Meal Breaks Provided by Commonwealth NY Were Legally Sufficient**

The plaintiff alleges in his Complaint that the Defendants violated federal and state law by not providing the appropriate meal break periods for the plaintiff.  Presumably the plaintiff's complaint is that his meal period is spent in his vehicle where he is waiting to transport another passenger.

The Second Circuit Court of Appeals has held that, "meal periods are compensable under the FLSA when employees during a meal break perform duties predominantly for the benefit of

the employer." <u>Reich v. S. New England Telecomm. Corp.</u>, 121 F.3d 58, 65 (2d Cir. 1997).  The Court declined to follow a literal reading of 29 C.F.R. § 785.19, and opted for a flexible approach to determining the compensability of meal break activity.  <u>Id.</u> at 64-65.

The U.S. Supreme Court has opined that, "Whether time is spent predominantly for the employer's benefit or for the employee's is a question dependent upon all the circumstances of the case." <u>Skidmore v. Swift & Co.</u>, 323 U.S. 134, 136-37 (1944).  "The question is not whether an employee did any work at all during his meal period, but whether that period itself is used primarily to perform activities for the employer's benefit." <u>Mendez v. Radec Corp.</u>, 232 F.R.D. 78, 83 (W.D.N.Y. Nov. 22, 2005).

Due to the unique nature of a chauffeur's job, they are not under the eye of a supervisor at all times.  Chauffeurs spend their shifts outside the base in the vehicles either transporting passengers or having "down time" between fares.  Under such circumstances, the best break policy Commonwealth NY could formulate was to instruct drivers to take their meal breaks when the opportunities presented themselves, and advise the company if they are ever unable to take a break.  Commonwealth NY had to rely upon their drivers to follow and comply with the company's meal break policy.  (S. Rutter Aff. ¶31)

The plaintiff admitted to engaging in activities for his own benefit, and not Commonwealth NY's, during what can only be described as bona fide meal breaks.  He admitted during his deposition that he had down time during his shifts when there were no passengers in the vehicle.  The plaintiff explained that during his entire employment with Commonwealth NY, on an average day he had road show assignments.  (Glynn Aff. Ex. C, Ellis Tr. p. 30)  When transporting a passenger for road shows, he would typically drop off a passenger many times throughout the day at various locations and then wait thirty minutes to an hour each time for the passenger to return to the vehicle.  (Glynn Aff. Ex. C, Ellis Tr. pp. 31-32)  During that time the

plaintiff admitted he ate food, spent time on his personal computer, or spent his down time catching up on his reading.

> Q.   Typically, how long would you be waiting for the passenger?
>
> A.   Thirty minutes to an hour.  (Glynn Affirmation, Ex. C, Ellis Tr. p. 32)
>
> Q.   So the down time that you would have within the car, would you ever eat your sandwich or have lunch or take a break during that time?
>
> A.   Yes, the down time, sometimes that down time when I'm sitting waiting for my client to come back, I have a sandwich in my bag.
>
> Q.   What else would you do while you're waiting for a client or passenger to come back?
>
> A.   I would be on my computer.
>
> Q.   Is that your personal computer?
>
> A.   That's my personal computer.
>
> Q.   Anything else?
>
> A.   Or probably I would be catching up on some Financial Times, news, or reading the Wall Street Journal.  No, just something that I do just to keep me, keep me up.  (Glynn Aff. Ex. C, Ellis Tr. pp. 33-34)

Clearly the plaintiff had sufficient time to take a meal break, and the time was spent predominantly for the plaintiff's benefit by either reading the news, eating and/or enjoying time on his personal computer.  In sum, the Defendants' motion for summary judgment should be granted on the basis that there is no question of fact that the plaintiff was provided with meal break time in compliance with FLSA § 785.19.

## VI.   PLAINTIFF'S UNJUST ENRICHMENT AND BREACH OF CONTRACT CLAIMS FAIL AS A MATTER OF LAW

The plaintiff's unjust enrichment claim and breach of contract claims are based on the notion that Commonwealth NY and Scott Rutter allegedly deprived him of amounts that they owed him under federal and state law.

An unjust enrichment claim in New York has three elements: 1) the defendant benefitted; 2) at the plaintiff's expense; and 3) equity and good conscience require restitution. E.g. Rodriguez v. Just Lunch Int'l., No. 07 Civ. 9227(SHS)(KNF), 2009 WL 399728, at *7 (S.D.N.Y. Feb. 17, 2009). However, the plaintiff cannot demonstrate that Commonwealth NY benefitted at the plaintiff's expense, as a matter of law, because as explained above, it was exempt from paying overtime, the spread of hours provision was inapplicable because his hourly rate exceeded the minimum wage, and the company's meal break policy did not violate any laws. Once this Court concludes that there are no statutory violations, there is no basis for the plaintiff's claim that Commonwealth NY did not benefit in any manner. Similarly, defendant Scott Rutter was not enriched and did not benefit in any manner.

Regarding his breach of contract claim, the plaintiff has asserted that he has an "implied contract" that Commonwealth NY breached by failing to pay him for all time worked and/or at his proper overtime rate. Meanwhile, the plaintiff did not have a contract with either Commonwealth NY, or Scott Rutter. (Glynn Aff., Ex. C. Ellis Tr. p. 117-118; Rutter Aff. ¶18) Regardless, this is nothing more than another version of his statutory overtime claims, which should be dismissed for the same reasons that are stated above.

New York courts are unwilling to create a separate cause of action for breach of contract where the obligation is statutory. For example, in Fry v. McCall, 945 F. Supp. 655, 667 (S.D.N.Y. 1996), the court held that violations of statutory or constitutional mandates give rise to claims under those laws or constitutional protections themselves, they do not create a separate cause of action for breach of contract under New York law." See also Sabetya v. Sterling Drug, Inc., 69 N.Y.2d 329, 336-37 (1987) (dismissing four breach of contract causes of action and finding that the significant alteration of employment relationship is best left to the NY legislature).

**VII.   THE CLAIM OF INDIVIDUAL LIABILITY AGAINST DEFENDANT SCOTT
RUTTER MUST BE DISMISSED ON THE GROUNDS THAT HE IS NOT AN
"EMPLOYER" UNDER 29 U.S.C. § 203(D)**

The plaintiff has named Commonwealth NY's Executive Vice President Scott Rutter as

an individual defendant.  He claims that Mr. Rutter is an "employer" under the definition

provided by § 203(b) of the FLSA, and therefore is subject to individual liability for his claims.

Only if an individual defendant meets the FLSA definition for an "employer", will it be

held jointly and severally liable to a plaintiff.  Keun-Jae Moon v. J. Kwon, 248 F. Supp. 2d 201,

237 (S.D.N.Y. 2002).  The FLSA'S definition of an "employer" is broad, and includes, "any

person acting directly or indirectly in the interest of an employer in relation to an employee . . ."

29 U.S.C. § 203(d).  Therefore, "the overreaching concern is whether the alleged employer

possessed the power to control the workers in question."  Herman v. Stern, 172 F. 3d 132, 139

(2d Cir. 1999).  To determine such, the "economic reality" test must be applied.

"Under the economic reality test, the relevant factors include whether the alleged

employer (1) had the power to hire and fire the employees, (2) supervised and controlled

employee work schedules or conditions of employment, (3) determined the rate and method of

payment, and (4) maintained employment records."  Id.  The test encompasses the totality of

circumstances, and not one of which is exclusive.  Id.

Applying the economic reality test, the Defendant Scott Rutter does not satisfy the

definition of an employer.  Mr. Rutter never had any involvement with three of the four

elements, and he was involved with the hiring and firing of employees for a limited period of

time and no longer has any involvement in that area.  When Commonwealth NY first opened its

operations in 2004, Mr. Rutter did interview and hire chauffeurs, including the plaintiff.  He

hired and fired chauffeurs and managed them until the company's operations became

established.  Mr. Rutter has not been involved with any hiring or firing decisions for several years.  (Rutter Aff. ¶3)

Mr. Rutter never supervised or controlled employee work schedules or conditions of employment.  He never determined the amount of compensation or method of pay for employees, all such decisions were made by President Dawson Rutter, the individual to whom Scott Rutter directly reports.  Finally, Mr. Rutter never maintained any employment records throughout his employment with Commonwealth NY.  (Rutter Aff. ¶4-5)

Mr. Rutter's responsibilities include sales, specifically developing and maintaining clients for the business.  He is also responsible for quality control, ensuring that the training programs are effective, chauffeurs are performing at a high quality and that the dispatchers are productive.  (Rutter Aff.  ¶6) Considering the totality of circumstances of Defendant Scott Rutter's role at Commonwealth NY, he is not an "employer" as defined by the FLSA.  Therefore, he cannot be held individually liable.

## VIII.  THE PLAINTIFF'S CLAIM OF "WILLFUL" VIOLATIONS OF THE FLSA & NEW YORK LABOR LAWS MUST BE DISMISSED ON THE GROUNDS THAT HE CANNOT MEET HIS BURDEN OF SHOWING RECKLESS DISREGARD OF THE LAW

The plaintiff alleges that Commonwealth NY "willfully" violated the FLSA within the meaning of § 255(a) and is therefore entitled to unpaid wages, overtime, liquidated damages, attorneys' fees, costs and interest as set forth in 29 U.S.C. § 216(b).  He also claims a willful violation of 12 N.Y. Comp. Codes R. & Regs. § 142-2.2.

An employer willfully violates the FLSA only if it, "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988).  Reckless disregard requires actual knowledge of a legal requirement, and deliberate disregard of the risk that one is in violation.  Clarke v. JPMorgan Chase Bank, No. 08 Civ. 2400(CM)(DCF), 2010 WL 1379778, at *10 (S.D.N.Y. Mar.

23

26, 2010). "Willfulness cannot be found where the employer acted negligently or assumed in good faith, but incorrectly, that its conduct complied with the FLSA." Id. A willful violation requires more than mere negligence. Damassia v. Duane Reade, Inc., No. 04 Civ. 8819(GEL), 2005 WL 1214337, at *7 n.2 (S.D.N.Y. May 20, 2005). "Plaintiffs must prove more than that defendant 'should have known' it was violating the law." Id.

The employee bears the burden of proving willfulness. Young v. Cooper Cameron Corp., 586 F. 3d 201, 207 (2d Cir. 2009). Conclusory allegations are insufficient to support liability; proof of willfulness requires a "factual showing" of an employer's knowing or reckless violation of the FLSA. Zhang v. L.G. Apparel, Inc., No. 09-CV-3240 (KAM), 2011 WL 900183, at *4 (E.D.N.Y. Feb. 18, 2011).

In New York, a violation of the state Labor Law is willful, warranting an award of liquidated damages in addition to lost wages where the employer, "knowingly, deliberately, or voluntarily disregards its obligations to pay wages." Ling Nan Zheng v. Liberty Apparel Co., Inc., No. 99 Civ. 9033(RJS), 2009 WL 1383488, at *1 (S.D.N.Y. May 18, 2009). The burden of proof lies on the plaintiff/employee to show the employer's conduct was willful. Kuebel v. Black & Decker Inc., No. 08-CV-6020T, 2010 WL 1930659, at *16 (W.D.N.Y. May 12, 2010). The standard of willfulness for the purposes of the FLSA does not "appreciably differ" from the New York law when determining whether to award liquidated damages. Moon v. Kwon, 248 F. Supp. 2d 201, 235 (S.D.N.Y. 2002).

In the present case, the plaintiff has not met his burden of demonstrating a factual showing that Commonwealth NY had "actual knowledge" that it had to pay overtime on his tips. His complaint simply states that the Defendants did not have a "good faith" basis for believing their pay practices were in compliance with the law," and that it constitutes a "willful" violation. There is no evidence in the record to demonstrate that the Defendants knew they had to pay

24

overtime on tips.  Also, Commonwealth NY has always operated under the assumption that there is no legal requirement to pay overtime compensation because they are exempt pursuant to the Motor Carriers Act and the Taxicab Exemption.

The plaintiff will be unable to meet his burden of showing the Defendants had actual knowledge that the plaintiff did not take all his meal breaks and took the deduction regardless of that fact, in violation of the law.  He cannot demonstrate willfulness because he himself testified that he never told the Defendants he was ever unable to take a meal break.  If Commonwealth NY did not know he did not take the meal break, any deduction could not be willful.

Finally, the plaintiff is unable to meet his burden of showing the Defendants had actual knowledge that they had to pay an extra hours of pay for all shifts worked in excess of ten hours, pursuant to the spread of hours provision because he was always compensated in excess of the minimum wage, making the law inapplicable to him.

## CONCLUSION

For the reasons set forth herein, Defendants' motion for summary judgment should be granted.

Dated:  New York, New York
      April 8, 2011

                              ROBINSON & COLE LLP

                              By: _____
                                 Katherine C. Glynn (KG-9541)
                               Attorneys for Defendants
                               Commonwealth Worldwide Chauffeured
                               Transportation of NY, LLC, and Scott Rutter
                               885 Third Avenue, Suite 2800
                               New York, New York 10022
                               (212) 451-2900

## CERTIFICATE OF SERVICE

I, Katherine C. Glynn, hereby certify that on this 8th day of April, 2011, a true copy of the foregoing **DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT** was served via Regular Mail, postage pre-paid upon the following:

*Attorneys for Plaintiff*

Penn U. Dodson, Esq.
Goldberg & Dohan, L.L.P.
275 Madison Avenue, Suite 705
New York, New York 10001
(646) 502-7751

Katherine C. Glynn (KG-9541)