UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
ANDREW ELLIS,                               :
                                            :
               Plaintiff,                   :
                                            :
          -against-                         :          **OPINION AND ORDER**
                                            :           10-CV-1741 (DLI)(JO)
COMMON WEALTH WORLDWIDE                      :
CHAUEFFUERED TRANSPORTATION                  :
OF NY, LLC, d/b/a Commonwealth              :
Worldwide, and SCOTT RUTTER,                :
                                            :
               Defendants.                  :
--------------------------------------------------------x

**DORA L. IRIZARRY, United States District Judge:**

Plaintiff Andrew Ellis ("Plaintiff") brought the instant action against defendants Commonwealth Worldwide Chauffeured Transportation of NY, LLC ("Commonwealth") and Scott Rutter ("Rutter," collectively with Commonwealth, "Defendants"), seeking to recover damages under the Fair Labor Standards Act ("FLSA"), the New York Minimum Wage Act, and under claims of unjust enrichment and breach of contract. Defendants and Plaintiff cross-moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and Plaintiff purports to make a motion to strike certain affirmative defenses and affidavits submitted by Defendants. For the reasons set forth below, Defendants' motion is granted and Plaintiff's motions are denied.

## BACKGROUND

**I.     The Parties**

Commonwealth is "in the business of providing chauffeured transportation services for compensation." (Defs.' Statement of Material Facts Not in Dispute, Dkt. Entry 28 ("Defs.' 56.1 Statement") ¶ 1; Pl's. Resp. to Defs.' Statement of Facts, Dkt. Entry 32 ("Pl's. 56.1 Resp.") ¶ 1.)

Commonwealth runs its business out of a garage in Queens, New York.  (Pl's. Statement of Undisputed Material Facts, Dkt. Entry 31 ("Pl's. 56.1 Statement") ¶ 3; Defs.' Resp. to Pl's. Statement of Undisputed Material Facts, Dkt. Entry 37 ("Defs.' 56.1 Resp.") ¶ 31.)

Rutter is currently the Executive Vice President and partial owner of Commonwealth. (Defs.' 56.1 Statement ¶ 2; Pl's. 56.1 Resp. ¶ 2; Pl's. 56.1 Statement ¶ 54; Defs.' 56.1 Resp. ¶ 54.)  Rutter hired Plaintiff to work at Commonwealth, though there is a dispute as to whether Rutter fired Plaintiff or whether Rutter still had hiring and firing authority by 2009, when Plaintiff was discharged.  (Pl's. 56.1 Statement ¶ 55; Defs.' 56.1 Resp. ¶ 55; Defs.' 56.1 Statement ¶ 24; Pl's. 56.1 Resp. ¶ 24.)

Plaintiff worked for Commonwealth as a chauffeur from July 2004 to June 24, 2009. (Pl's. 56.1 Statement ¶ 1; Defs.' 56.1 Resp. ¶ 1.)  He never had a written employment agreement while working for Commonwealth.  (Defs.' 56.1 Statement ¶ 31; Pl's. 56.1 Resp. ¶ 31.)

## II.   Plaintiff's Compensation

While employed by Commonwealth, Plaintiff's base rate of pay was $8 per hour. (Compl. ¶ 26; Answer ¶ 26.)  On occasion, Plaintiff worked more than ten hours per day.  (Pl's. 56.1 Statement ¶ 34; Defs.' 56.1 Resp. ¶ 34.)  When Plaintiff worked more than 40 hours in a given week, Commonwealth paid Plaintiff overtime at $12 per hour, which was time and a half of Plaintiff's usual $8 hourly rate.  (Pl's. 56.1 Statement ¶ 35; Defs.' 56.1 Resp. ¶ 35.)  Any tips Plaintiff received were not included in calculating his overtime pay.  (Defs.' 56.1 Statement ¶ 37; Pl's. 56.1 Resp. ¶ 37.)

Commonwealth's clients, which included both individuals and businesses, received invoices on which appeared an amount for the fare and an amount for a "Recommended Tip," calculated at 20% of the fare.  (Pl's. 56.1 Statement ¶ 13; Defs.' 56.1 Resp. ¶ 13; Aff. of Scott

Rutter, dated Apr. 8, 2011, Dkt. Entry 26-8 ("Rutter Aff.") Ex. C.)  The invoice had an asterisk next to the Recommended Tip amount referencing a footnote stating "[t]he actual amount of tip is in the discretion of the customer; any tip received will be remitted in full to the chauffeur." (Rutter Aff. Ex. C.)  Sometimes, passengers also gave cash tips directly to the driver in addition to any Recommended Tip that the client ultimately paid.  (Pl's. 56.1 Statement ¶ 29; Defs.' 56.1 Resp. ¶ 29.)

According to Rutter, when a client paid its invoice, whatever amount the client paid as the Recommended Tip (whether or not it was 20%) was given to Plaintiff in his subsequent paycheck in addition to the regular $8 per hour wage and any overtime pay.  (Pl's. 56.1 Statement Ex. D, ("Rutter Dep.") 74:24-75:3.)  Rutter testified at a deposition that, when a client had not paid its invoice for a particular ride before the end of the pay period during which the ride occurred, Commonwealth would pay Plaintiff the Recommended Tip at 20% of the fare anyway, but, if the client ultimately paid more than the recommended 20%, Commonwealth would add that additional amount to Plaintiff's subsequent paycheck.  (*Id.* 106:3-107:2.) However, if the client ultimately did not pay its invoice, Commonwealth would not claw back the 20% recommended tip it had already paid to Plaintiff.  (*Id.* 75:9-20.)

## III.  Commonwealth's Meal Break Policy

In February 2009, Commonwealth implemented a new meal break policy for its chauffeurs.  Under this policy, Commonwealth automatically deducted 30 minutes for an unpaid "meal break" for all chauffeurs, including Plaintiff, when they worked six or more consecutive hours in a day.  (Defs.' 56.1 Statement ¶ 41; Pl's. 56.1 Resp. ¶ 41.)  Prior to implementing this policy, Commonwealth held meetings with its chauffeurs to explain and discuss the new policy. (Defs.' 56.1 Statement ¶ 44; Pl's. 56.1 Resp. ¶ 44.)  There was a question and answer session

before the end of the meeting to ensure that each driver understood the new policy. (Defs.' 56.1 Statement ¶ 46; Pl's. 56.1 Resp. ¶ 46.)

During the meeting, Commonwealth gave Plaintiff and the other chauffeurs a written copy of its "Break, Meals and Start Time Policy." (Defs.' 56.1 Statement ¶ 47; Pl's. 56.1 Resp. ¶ 47.) Plaintiff reviewed, signed and returned the policy at the end of the meeting. (Defs.' 56.1 Statement ¶ 47; Pl's. 56.1 Resp. ¶ 47; Rutter Aff. Ex. B.) The written policy that Plaintiff signed provided, among other things, that Plaintiff was entitled to take two fifteen-minute paid breaks during every six hours of work time plus one thirty-minute unpaid lunch break for every six hours of work time. (Rutter Aff. Ex. B. 430.) The policy explained that it was up to the chauffeurs to take their breaks when the opportunity presented itself. (*Id*.) The policy also instructed employees to "[p]lease tell your supervisor if you do not believe you had the opportunity for a full meal break in any given day." (*Id.* at 431.) When employees informed Commonwealth that they were unable to take a lunch break, it was Commonwealth's policy not to deduct for the unpaid 30 minute meal break that day. (Defs.' 56.1 Statement ¶ 54; Pl's. 56.1 Resp. ¶ 54.) However, between the policy taking effect and the end of Plaintiff's employment with Commonwealth, Plaintiff never informed Commonwealth that he was unable to take a meal break. (Defs.' 56.1 Statement ¶ 51; Pl's. 56.1 Resp. ¶ 51.)

**IV.    Plaintiff's Claims**

Plaintiff brought this action alleging that Defendants violated the FLSA by: (i) not including the Recommended Tip as part of Plaintiff's regular wage for the purpose of calculating his overtime rate; and (ii) automatically deducting meal breaks from Plaintiff's pay. (*See* Pl's. Mem. of Law in Support of His Mot. for Summ. J. and in Opp'n to Defs.' Mot. for Summ. J.,

Dkt. Entry 30 ("Pl's. Mem.") 11-17, 20-23.)[1]  Plaintiff also alleges that Defendants violated New York's "spread of hours" law by not compensating Plaintiff for an extra hour of pay at minimum wage for every day he worked more than 10 hours.  (*Id.* 18-20.)  Finally, Plaintiff brings claims for unjust enrichment and breach of contract, apparently under the same theories as his FLSA and New York statutory claims.  (Compl. ¶¶ 68-75.)

Defendants seek summary judgment, contending there is no genuine issue of fact that:  (i) Defendants are exempt from paying overtime under the "taxicab exemption" and the "motor carrier exemption" of the FLSA's overtime requirements, *See* 29 U.S.C. § 213(b); (ii) even if no exemptions apply, Plaintiff's overtime wages were calculated properly under the FLSA; (iii) Plaintiff is not entitled to "spread of hours" pay under New York law; (iv) Commonwealth's automatic meal break deductions were proper; (v) Defendants were not unjustly enriched at Plaintiff's expense and did not breach any contract with Plaintiff; (vi) Rutter is not an "employer" under 29 U.S.C. § 203(d) and, therefore, cannot be held individually liable; and (vii) any labor law violations by Defendants were not willful.[2]  (*See* Defs.' Mem. of Law in Supp. of their Mot. for Summ. J., Dkt. Entry 27 ("Defs' Mem.").)

Plaintiff cross-moved for summary judgment on his overtime claims, arguing that whether the taxicab or motor carrier exemption applies is purely a matter of law for the court to decide and, in any event, Defendants waived this defense by not raising it in their Answer.  (Pl's. Mem. 2-11.)  In addition, Plaintiff purports to move to strike factual affidavits submitted by

---

[1] Initially, Plaintiff alleged that Defendants violated the FLSA's record keeping provisions but has since conceded that these provisions do not provide for a private cause of action and is not asserting a record keeping claim.  (*See* Letter in Resp. to Defs.' Proposed Mot. for Summ. J., Feb. 16, 2011, Dkt. Entry 21 at 2.)

[2] Because Plaintiff has failed to show any FLSA violation at all, the court need not address Defendants' willfulness argument.  Similarly, the court need not decide whether Rutter was an "employer" under 29 U.S.C. § 203(d) and, therefore, for purposes of this motion, will assume, without deciding, that Rutter was Plaintiff's "employer."

Defendants in support of their summary judgment motion and to strike Defendants' taxicab and motor carrier affirmative defenses.  (*See* Pl's. Mot. for Summ. J., Dkt. Entry 29.)  This request is summarily denied requiring no further explanation than that set forth in Note 3 below.[3]

Plaintiff also opposes Defendants' motion for summary judgment, arguing that there are genuine issues of material fact as to whether:  (i) Defendants violated state and federal labor laws; (ii) Defendants' violations were willful; and (iii) Rutter is an "employer" who can be held individually liable.  (*See generally* Pl's. Mem.)

## LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The court must view all facts in the light most favorable to the nonmoving party, but "only if there is a 'genuine' dispute as to those facts."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Id*.  A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a

---

[3] As previously admonished by the court, Plaintiff should not have filed a separate motion to strike, as he only needed to object to the materials presented by Defendants.  *See* Fed. R. Civ. P. 56(c)(2); Fed. R. Civ. P. 56(c)(2) Advisory Committee Notes ("There is no need to make a separate motion to strike.").  In any event, Plaintiff presents no legal argument in his memorandum of law as to why the affidavits of Rutter and Diane Pessolano, Commonwealth's controller, should not be considered by this court.  Affidavits can be considered in a summary judgment motion, if they are "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).  The information contained in the affidavits submitted by Rutter and Pessolano profess to be based upon personal knowledge and the exhibits attached thereto are business records with which they are familiar.  Accordingly, Plaintiff's request to strike these materials is denied.  *See Harriscom Svenska, AB v. Harris Corp.*, 3 F. 3d 576, 581 (2d Cir. 1993) ("The challenged affidavits . . . are in fact based on personal knowledge and perceptions and therefore properly were considered.  The documents were admissible business records." (citation omitted)).

verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmoving party, however, may not rely on "[c]onclusory allegations, conjecture, and speculation," *Kerzer v. Kingly Mfg.,* 156 F. 3d 396, 400 (2d Cir. 1998), but must affirmatively "set out specific facts showing a genuine issue for trial," Fed. R. Civ. P. 56(e).   "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., Ltd. P'ship.*, 22 F. 3d 1219, 1224 (2d Cir. 1994) (citing *Dister v. Cont'l Group, Inc.*, 859 F. 2d 1108, 1114 (2d Cir. 1988)).

## DISCUSSION

### I.      Proper Calculation of Overtime

Plaintiff contends that the 20% Recommended Tip, despite its nomenclature, was in reality a service charge or a commission, rather than a real tip, because it was a mandatory charge to customers.  (Pl's. Mem. 11-17.)   According to Plaintiff, therefore, the Recommended Tip he received should have been included as part of his regular hourly rate for purposes of calculating his time and a half overtime rate.  (*Id.*)   Defendants acknowledge that when Plaintiff worked more than 40 hours in a week, they paid him overtime at $12 per hour based on his regular $8 hourly wage, without taking into account any Recommended Tips he received.  (*See* Pl's. 56.1 Statement ¶¶ 34-35; Defs.' 56.1 Resp. ¶¶ 34-35; Defs.' 56.1 Statement ¶ 37; Pl's. 56.1 Resp. ¶ 37.)   However, Defendants counter that Plaintiff has not pointed to any evidence suggesting that the Recommended Tip was not discretionary and, thus, properly was excluded from Plaintiff's "regular rate."  (Defs.' Reply Mem. of Law in Supp. of their Mot. for Summ. J., Dkt. Entry 33 ("Defs.' Reply Mem."), at 4-7.)

Pursuant to the FLSA:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1) (2012).

Where an employer, such as Commonwealth, is not using a "tip credit" to satisfy the FLSA's minimum wage provision, any tips the employee receives "need not be included in the regular rate" for purposes of calculating proper overtime wages.  29 C.F.R. § 531.60 (2012). Federal regulations define a tip as:

> a sum presented by a customer as a gift or gratuity in recognition of some service performed for him.  It is to be distinguished from payment of a charge, if any, made for the service. Whether a tip is to be given, and its amount, are matters determined solely by the customer, who has the right to determine who shall be the recipient of the gratuity.

29 C.F.R. § 531.52 (2012).  However, "[a] compulsory charge for service, such as 15 percent of the amount of the bill, imposed on a customer by an employer's establishment, is not a tip."  29 C.F.R. § 531.55 (2012).

Here, there is no genuine factual dispute that the Recommended Tip was discretionary, and not a mandatory 20% charge.  There is no dispute that Commonwealth's invoices noted next to the Recommended Tip charge that "[t]he actual amount of the tip is in the discretion of the customer; any tip received will be remitted in full to the chauffeur."  (Rutter Aff. Ex. C.)  Rutter, as well as Diane Pessolano, Commonwealth's controller, both attested that the Recommended Tip was not mandatory and clients could and would pay either more or less than the recommended 20%.  (*Id.* ¶ 24; Aff. of Diane Pessolano, dated Apr. 8, 2011, Dkt. Entry 26-12 at ¶¶ 7-8.)  Plaintiff has failed to point to anything in the record rebutting this evidence.  Therefore,

the court finds that the Recommended Tip was a tip as a matter of law.  *See Chan v. Sung Yue Tung Corp.*, 2007 WL 313483, at \*14 (S.D.N.Y. Feb. 1, 2007) (Lynch, J.) (as opposed to a tip, "a 'service charge' is a mandatory charge imposed by an employer on a customer that is the property of the employer, not the employees, and becomes part of the employer's gross receipts.").

The court's statement in *Fox v. Commonwealth Worldwide Chauffeured Transportation of NY, LLC*, 2009 WL 1813230 (E.D.N.Y. June 25, 2009), another FLSA case against Commonwealth upon which Plaintiff relies, that "Plaintiff also alleges that Commonwealth subjected similarly situated employees to the same policy of excluding the mandatory service charge from the calculation of the overtime rate" provides no evidentiary support for Plaintiff's contention that the Recommended Tip was mandatory.  *Id.* at \*1.  By this statement, the court in *Fox* was not making a finding of fact, but rather was reciting allegations made in the plaintiff's complaint in the context of a motion to dismiss, where factual allegations must be accepted as true.  *See id.*  The posture here is obviously quite distinct as Plaintiff is required to support his allegations with proof that the Recommended Tip was mandatory.[4]

Plaintiff relies heavily upon Rutter's deposition testimony that Commonwealth still paid Plaintiff the Recommended Tip at the 20% recommended rate for trips where the client had yet to pay its bill before Plaintiff's pay period ended.  (*See* Rutter Dep. 74:24-75:3; 106:3-19.) However, simply because Commonwealth occasionally paid Plaintiff the Recommended Tip at the anticipated 20% of the bill rate, before it knew for certain the amount of the tip the client

---

[4] Plaintiff's citations to non-binding cases from courts of concurrent jurisdictions outside of this circuit are similarly unavailing.  In *Avery v. Chariots For Hire*, 748 F. Supp. 2d 492 (D. Md. 2010), the court held at the motion to dismiss stage that the "service fee" was not a tip because the plaintiff had alleged that the fee was compulsory and included charges for tax, fuel, and partial gratuity.  *Id.* at 495, 502.  In *Powell v. Carey International, Inc.*, 514 F. Supp. 2d 1302, 1308, 1314 (S.D. Fla. 2007), there was evidence that the "gratuity" was "fixed" at 20% and thus not a tip.

9

actually would pay, does not by itself prove that the clients ultimately were forced to pay the 20% Recommended Tip.  It would be an odd result if Defendants were held to violate the FLSA by paying Plaintiff *more* than he ultimately might have been entitled to if Commonwealth waited until its invoices were paid before paying Plaintiff whatever Recommended Tip amount the client included in his payment.

Plaintiff's other contentions are no more than attempts at misdirection.  Plaintiff asserts that, because many of Commonwealth's invoices were paid by businesses, such as hotels or financial institutions, rather than by the actual passengers, the Recommended Tips could not have been based upon Plaintiff's performance.  (Pl's. Mem. 17.)  However, Plaintiff points to no authority that a tip cannot be paid by a third party who had no direct contact with the server and still be considered a tip under the FLSA.  Similarly, Plaintiff's argument that the Recommended Tip was not really a tip because Commonwealth's drivers were unaware of how much clients were being charged for any particular ride and the drivers never saw the actual invoices is a *non sequitur*.  (*See id*.)  These assertions do nothing to demonstrate that clients had no discretion as to whether to pay any, all of, more or less than, the 20% Recommended Tip.

For the forgoing reasons, the court finds that there is no genuine material question of fact as to the whether the Recommended Tip is mandatory, thus requiring that it be included in Plaintiff's "regular rate."  Summary Judgment is granted to Defendants on this ground.

Plaintiff alleges an identical overtime claim under New York law, which the parties fail to address in their memoranda of law.  (*See* Compl. ¶ 56)  It is also without merit as the foregoing analysis also applies.  N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2 (2012) ("An employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate in the manner and methods provided in [the FLSA].");  *Lewis v. Alert*

*Ambulette Serv. Corp.*, 2012 WL 170049 (E.D.N.Y. Jan. 19, 2012) ("New York State labor regulations substantially incorporate and adopt the FLSA's overtime regulations. As such, the same elements are required to prove plaintiffs' claim under New York labor law as under federal law." (citation omitted)); *Khan v. IBI Armored Servs., Inc.*, 474 F. Supp. 2d 448, 451 n.1 (E.D.N.Y. 2007) ("New York's overtime law incorporates most of the FLSA's substantive provisions and exemptions, and a court's analysis under federal and state law will, in this and most cases, be the same." (citation omitted)).   Accordingly, Defendants are also granted summary judgment on Plaintiff's claim that they violated New York's overtime law by omitting the Recommended Tip in calculating Plaintiff's overtime wage.[5]

## II.    Spread of Hours

Plaintiff contends that he was entitled to an extra hour of pay at the prevailing minimum wage every time he worked more than ten hours in a single day pursuant to New York's "spread of hours" law.  (Pl's. Mem. 18-20.)  In New York State, "[a]n employee shall receive one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required in this Part for any day in which . . . the spread of hours exceeds 10 hours."  N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4 (2012).   "The *spread of hours* is the interval between the beginning and end of an employee's workday."   N.Y. Comp. Codes R. & Regs. tit. 12, § 142-3.16 (2012) (emphasis in original).

Plaintiff maintains that this court should follow *Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327 (S.D.N.Y. 2005), where the court held that spread of hours pay is applicable to

---

[5] The court need not reach Defendants' alternative argument that they did not have to pay Plaintiff any overtime because Commonwealth falls under the "taxicab" and "motor carrier" exemptions to the FLSA's overtime provisions.  Plaintiff's overtime claims are deficient for the reasons discussed above, even assuming, *arguendo*, that the exemptions do not apply.  Plaintiff's cross-motion for summary judgment on his overtime claims and his motion to strike Defendants' affirmative defenses are denied for the same reasons.

individuals making more than the minimum wage. *See id.* at 339-40. Plaintiff further argues that, to the extent other courts have differed from *Yang*, they have held that spread of hours pay applies to individuals making close to the minimum wage. (Pl's. Mem. 18-20.) Defendants acknowledge that they did not pay Plaintiff an extra hour at minimum wage when he worked more than ten hours in a day, but counter that the vast majority of courts have held that employers need to pay spread of hours wages only to employees making the minimum wage. (Defs.' Reply Mem. 7-8.)

While, as the parties recognize, district courts are split as to whether spread of hours pay is required for employees making more than the minimum wage, the strong weight of authority and the plain statutory language lead this court to the conclusion that an employer need only pay spread of hours wages to employees making minimum wage, which is not the case with Plaintiff.

In *Yang*, the court determined that an opinion letter from the New York State Department of Labor stating that, "if the weekly wages actually paid to an employee equal or exceed the total of: (i) 40 hours paid at the basic minimum wage rate; (ii) overtime paid at the particular employee's overtime rate; and (iii) one hour's basic minimum wage rate for each day the employee worked in excess of 10 hours, then no additional compensation is due," was not entitled to any deference. 427 F. Supp. 2d at 339-40. The court then held that:

> [t]he effect of adopting the agency's interpretation would be to carve out an exception to the spread of hours provision for workers who are properly paid overtime and make more than the minimum wage. . . . Defendants do not offer any argument that the regulation's language itself dictates this exception, and the Court sees none.

*Id*.

However, as explained in a more recent case in this district, "a majority of the cases since *Yang* have disagreed as to both the holding that the plain language of the statute did not limit its applicability to minimum wage workers and the court's decision not to grant deference to the

Department of Labor opinion letter." *Sosnowy v. A. Perri Farms, Inc.*, 764 F. Supp. 2d 457, 473 (E.D.N.Y. 2011) (internal citation omitted); *see also Zubair v. EnTech Eng'g P.C.*, 808 F. Supp. 2d 592, 601 (S.D.N.Y. 2011) ("[T]he Court finds that the explicit reference to 'minimum wage' in § 142–2.4 indicates that such a provision is properly limited to those employees who receive only the minimum compensation required by law."); *Almeida v. Aguinaga*, 500 F. Supp. 2d 366, 370 (S.D.N.Y. 2007) ("The 'exception' perceived by the *Yang* court is illusory:  no group of well-paid workers is carved out from getting more 'minimum' pay, because the spread-of-hours provision is properly limited to enhancing the compensation of those receiving only the minimum required by law"); *Chan v. Triple 8 Palace, Inc.*, 2006 WL 851749, at *21 (S.D.N.Y. Mar. 20, 2006) (disagreeing with *Yang*); *Espinosa v. Delgado Travel Agency*, 2007 WL 656271, at *2 (S.D.N.Y. March 2, 2007) ("By its plain language, section 142–2.4(a) only provides supplemental wages to workers who are paid the minimum wage required under New York law."); *Jenkins v. Hanac, Inc.*, 493 F. Supp. 2d 556, 558-59 (E.D.N.Y. 2007) (explaining that an individual making more than minimum wage not entitled to spread of hours); *Franklin v. Breton Int'l, Inc.*, 2006 WL 3591949, at *4 (S.D.N.Y. Dec. 11, 2006) (spread of hours provision "applies only to workers earning the minimum wage"); *Seenaraine v. Securitas Sec. Servs. USA, Inc.*, 37 A.D.3d 700, 701-02 (2d Dep't 2007) ("[T]he Department of Labor's interpretation of the regulation is neither unreasonable nor irrational, nor is it in conflict with the plain meaning of the promulgated language."); *but see Cuzco v. Orion Builders, Inc.*, 2010 WL 2143662, at *4 (S.D.N.Y. May 26, 2010) (relying on *Yang* without discussion as to the split); *Saca v. Dav-El Reservation Sys., Inc.*, 600 F. Supp. 2d 483, 488 (E.D.N.Y. 2009) (declining to follow cases disagreeing with *Yang* at the motion to dismiss stage but granting defendant leave to renew argument in any post-discovery dispositive motion).

This court agrees with the majority of courts of this circuit that have considered this issue that, by its plain language, the spread of hours statute applies only to employees making minimum wage.  The provision explicitly provides that an employee shall receive the additional pay "in addition to *the minimum wage* required in this Part."  N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4 (2012) (emphasis added).  If the Legislature had desired the statute to apply to all wage earners, it would not have referenced the minimum wage or easily could have included language stating that the provision applied to all wage earners.

As a fallback argument, Plaintiff argues that even if this court disagrees with *Yang*, the spread of hours provision still should apply to "low wage workers" that make only slightly more than the minimum wage.  (Pl's. Mem. 18-20.)  The court holds that the plain statutory language provides no support for such an interpretation.  The statute explicitly uses the term "minimum wage," rather than "close to minimum wage" or something similar.  *See* N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4 (2012).  Moreover, while some courts, in disagreeing with *Yang*, have concurred with the court in *Chan*, that the statute "will not affect workers whose total weekly compensation is already *sufficiently* above the minimum rate," 2006 WL 851749, at *21 (emphasis added), when read in context, it does not appear that courts have meant to carve out an exception for employees making some indeterminate amount slightly above the minimum wage. *See, e.g.*, *id.* ("§ 142.4 by its own terms is concerned only with ensuring an additional amount above the '*minimum wage*' when certain conditions are met" (emphasis added)); *Almeida*, 500 F. Supp. 2d at 370 ("[T]he spread-of-hours provision is properly limited to enhancing the compensation of those receiving *only* the minimum required by law." (emphasis added)); *Zubair*, 808 F. Supp. 2d at 601 (same).

14

Therefore, because it is undisputed that Plaintiff received $8 per hour in wages while working for Commonwealth, which was above the applicable minimum wage at all relevant times, Plaintiff is not entitled to spread of hours compensation.

## IV.   Deduction for Meal Breaks

Plaintiff contends that Commonwealth's policy implemented beginning in February 2009 to automatically deduct employees' pay for a thirty-minute meal break unless they affirmatively told the company that they did not have a chance to have a meal break, runs afoul of the FLSA. (Pl's Mem. 20-23.)  Plaintiff argues that he was "engaged to wait" even during his downtime and, thus, was unable to take bona fide meal breaks.  (*Id.* 20-22.)  Plaintiff further asserts that Commonwealth's policy (a written copy of which Plaintiff signed) requiring Plaintiff to report any meal breaks he was unable to take violates the prohibition against private agreements that diminish an employee's FLSA rights.  (*Id.* 22-23.)

Defendants counter that such self-reporting policies are consistent with the FLSA. (Defs.' Mem. 18-20.)  Defendants also argue that Plaintiff never reported to Commonwealth that he was unable to take any meal breaks and has not presented any evidence to that effect.  (Defs.' Reply 8-9.)

Pursuant to federal regulations,

> Bona fide meal periods are not worktime. . . .  The employee must be completely relieved from duty for the purposes of eating regular meals.  Ordinarily 30 minutes or more is long enough for a bona fide meal period.  A shorter period may be long enough under special conditions.  The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating.  For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating.

29 C.F.R. § 785.19 (2012).

In construing 28 C.F.R. § 785.19, the Second Circuit has adopted "a flexible approach to determining compensability of meal break activity."  *Reich v. S. New Eng. Telecomm. Corp.*, 121

F. 3d 58, 64 (2d Cir. 1997).  Specifically, the court has held that § 785.19 requires compensation "for a meal break during which a worker performs activities predominantly for the benefit of the employer." *Id*.

Courts have recognized that "automatic meal deduction policies are not *per se* illegal." *Wolman v. Catholic Health Sys. of Long Island, Inc.*, 2012 WL 566255, at *7 (E.D.N.Y. Feb. 16, 2012); *see also Fengler v. Crouse Health Found., Inc.*, 595 F. Supp. 2d 189, 195 (N.D.N.Y. 2009) ("[T]he mere existence and implementation of a policy or practice of making automatic deductions for scheduled meal breaks in and of itself does not violate the FLSA.").  "It is the failure of an employer to compensate employees who work through those unpaid meal breaks, and to police and oversee hourly workers and their supervisors to ensure that when working through or during unpaid meal breaks they are compensated, that potentially runs afoul of the Act." *Fengler*, 595 F. Supp. 2d at 195; *see also White v. Baptist Mem'l Health Care Corp.*, 2011 WL 1883959, at *9 (W.D. Tenn. May 17, 2011) ("Where an employer's formal policy is to compensate employees for all time worked, courts have generally required a showing that the employer's common or uniform practice was to not follow its formal, written policy." (quotation marks omitted)).[6]

As another court in this district explained recently:

---

[6] The court is not persuaded otherwise by the holding in *Kuznyetsov v. West Penn Allegheny Health System, Inc.*, 2009 WL 1515175 (W.D. Pa. June 1, 2009), Plaintiff's single citation in support of his argument that automatic meal break deductions are improper under the FLSA.  In *Kuznyetsov*, the district court granted conditional certification of a putative class challenging the defendants' automatic meal deduction policy, *id.* at *5, which carries a much lower burden for a plaintiff than summary judgment.  *See Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007) (noting that a plaintiff's burden at the conditional certification stage is "minimal" and "the court does not resolve factual disputes, decide substantive issues challenging the ultimate merits, or make credibility determinations.").  Indeed, the court in *Kuznyetsov* explained that by granting conditional certification, it "does not mean that ultimately the policies may not be found to be 'lawful.'"  *Kuznyetsov*, 2009 WL 1515175, at *5 n.2.

16

> an employer's *failure* to '*ensure*' that its employees are not working during unpaid meal breaks does not make the use of an automatic meal deduction policy illegal.  Rather, it is the *failure* to *compensate* an employee who worked with the employer's knowledge through an unpaid meal break—whether the employee reported the additional time or not—that potentially violates the FLSA.

*Wolman*, 2012 WL 566255, at *8 (emphasis in original).

Here, even assuming for the sake of argument that there is a genuine dispute as to whether Plaintiff worked through at least some of his unpaid meal breaks, Plaintiff has presented no evidence that Defendants were aware that Plaintiff did not take a single meal break for which he was not paid.  *See Holzapfel v. Town of Newburgh*, 145 F. 3d 516, 524 (2d Cir. 1998) ("While an employer must pay for work it suffers or permits, an employer cannot suffer or permit an employee to perform services about which the employer knows nothing." (internal citation omitted)).  There is no dispute that Plaintiff reviewed, signed and returned Commonwealth's written policy, which plainly instructed Plaintiff to "tell your supervisor if you do not believe you had the opportunity for a full meal break in any given day."  (Defs.' 56.1 Statement ¶ 47; Pl.'s 56.1 Resp. ¶ 47; Rutter Aff. Ex. B at 431.)  Notably, Plaintiff concedes that he never informed his supervisors that he was unable to take a meal break.  (Defs.' 56.1 Statement ¶ 51; Pl.'s 56.1 Resp. ¶ 51.)  Plaintiff has not pointed to any evidence in the record that Defendants violated their written policies and declined to pay Plaintiff when he told his supervisor that he could not take a meal break.  There is also no evidence that Commonwealth knew that Plaintiff was unable to take his meal breaks, particularly because it is undisputed that Plaintiff's job, by its very nature, involved a lot of travelling where he could not be monitored easily by his supervisors.  Therefore, Plaintiff's claim must be dismissed as must his similar claim brought under New York law.

The parties did not address the New York law counterpart of this claim in their briefs. The Complaint alleges that Defendants' meal break policy violated New York Labor Law Sections 162 and 193. (Compl. 58-64.)   Defendants are entitled to summary judgment on Plaintiff's Section 162 claim because "there is no private right of action to enforce [Section 162]." *Browne v. IHOP*, 2005 WL 1889799, at *2 (E.D.N.Y. Aug. 9, 2005).   In addition, Section 193 "was intended to place the risk of loss for such things as damaged, spoiled merchandise, or lost profits on the employer rather than the employee." *Hudacs v. Frito-Lay*, 90 N.Y. 2d 342, 344 (1997).   The provision does not cover failure to pay an employee for time worked and, therefore, the court grants Defendants' motion for summary judgment on this claim as well.   *See Ireton-Hewitt v. Champion Home Builders Co.*, 501 F. Supp. 2d 341, 353 (N.D.N.Y. 2007) (§ 193 inapplicable because defendant "did not make unauthorized deductions from Ireton-Hewitt's vacation or severance pay.   Rather, it never tendered payment of unused vacation pay and severance pay to plaintiff.").

## V.      Breach of Contract and Unjust Enrichment

Defendants also move for summary judgment on Plaintiff's claims for unjust enrichment and breach of contract.   Defendants argue that, because there is no evidence they violated the FLSA, Plaintiff has not put forward any proof that Defendants were unjustly enriched at Plaintiff's expense.   (Defs.' Mem. 21.)   Defendants also assert that Plaintiff did not have an actual or implied contract with Defendants, and thus has not shown any breach of contract.   (*Id*.)

Plaintiff did not respond to Defendants' contentions relating to his breach of contract and unjust enrichment claims.   However, the court still must consider whether Defendants are entitled to summary judgment on these claims because "[e]ven when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant

18

is entitled to judgment as a matter of law." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F. 3d 241, 242 (2d Cir. 2004).

### A.      Unjust Enrichment

To recover for unjust enrichment under New York law, a plaintiff must establish:  "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution."  *Beth Israel Med. Ctr. v. Horizon Blue Cross and Blue Shield of N.J., Inc.*, 448 F. 3d 573, 586 (2d Cir. 2006) (quotation marks omitted).  Here, there is nothing in the record to support their claim that Defendants were unjustly enriched at Plaintiff's expense. As previously discussed, Defendants paid Plaintiff properly in accordance with the FLSA and New York law.  Thus, Plaintiff has not shown why equity and good conscience require any restitution be paid by Defendants.

### B.      Breach of Contract

For his breach of contract claim, Plaintiff alleged that "Plaintiffs and Defendant had an implied employment contract insofar as the employment relationship is inherently contractual in nature." (Compl. ¶ 72.)  Plaintiff averred that Defendants violated a promise to pay Plaintiff "a certain rate of pay for *all* hours worked, plus 20% of fares collected, and time and a half for hours over 40 worked in a workweek."  (*Id.* ¶¶ 74-75 (emphasis in original).)   Defendants counter that they did not have an employment agreement with Plaintiff and that, in any event, the claim is deficient for the same reason that Plaintiff's statutory claims are deficient. (Defs.' Mem. 21.)

In New York, it is well-settled that "[a]*bsent an agreement establishing a fixed duration*, an employment relationship is presumed to be a hiring at will, terminable at any time by either party." *Rooney v. Tyson*, 91 N.Y. 2d 685, 689 (1998) (emphasis in original).  Plaintiff admitted

in his deposition that he did not have a written employment contract with Commonwealth, and there is nothing in the record that indicates otherwise.  (*See* Aff. of Katherine C. Glynn in Supp. of Defs.' Mot. for Summ. J., Dkt. Entry 26-1, Ex. C 117:6-118:6.)  Moreover, Plaintiff's breach of contract claim appears to be a re-hashing of his insufficient statutory claims.  Where an employer violates a statute, the employee's remedy is for violating the statute and is not for breach of contract.  *See Fry v. McCall*, 945 F. Supp. 655, 667 (S.D.N.Y. 1996) (Statutory or constitutional violations "give rise to claims under those laws or constitutional protections themselves, they do not create a separate cause of action for breach of contract under New York law. Were it otherwise, any firing in violation of a statute or constitutional mandate would also give rise to a breach of contract claim.").  Accordingly, Plaintiff's breach of contract claim cannot survive.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted, Plaintiff's cross-motion for summary judgment is denied and the complaint is dismissed.

SO ORDERED.

Dated: Brooklyn, New York
        March 23, 2012

                                              /s/
                                    _____
                                    DORA L. IRIZARRY
                                    United States District Judge